PETERSEN, Appellant, vs. JANSEN and others, Respondents.

*November 8—December 3, 1940.*

294

*Dorothy Walker* of Portage, for the appellant.

For the respondents there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett,* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. Pett* and *Mr. Conrad.*

WICKHEM, J.   In all but one respect this case involved an ordinary automobile accident in which two cars going in opposite directions collided and in which the jury on sufficient evidence found that both drivers were negligent in different degrees and assessed the damages sustained.   Were it not for the circumstance that the accident occurred on a newly laid state highway which had not been opened to public travel, was barricaded to prevent its use as a highway, and placarded with a sign prohibiting public use as such, this case would have been affirmed without opinion.   We shall isolate and discuss only such questions as arise out of the peculiarities of the case.   We proceed to a statement of the facts involved.

The accident happened on August 28, 1939, at about 8 o'clock p. m. on a portion of United States Highway

No. 16 which was then under construction. The new highway runs in an easterly and westerly direction. The point of accident was about fifteen hundred feet east of the point where United States Highway No. 16 intersects United States Highway No. 51. The section of the road where the accident occurred was a twenty-foot concrete highway. The concrete had been laid for a few weeks, but the black center line had not been painted on it nor had the shoulders been completed. The entrance to this road was barricaded and the usual "road closed" signs had been erected under the authority of the Columbia county highway commissioner. At the time of the accident public travel was not permitted on the portion of United States Highway No. 16 where the accident took place. Plaintiff was superintendent of construction under the contractor who was building the highway. On the night of the accident he had gone to the east end of the job to get the pay roll, and immediately prior to the accident was driving west to the Portage office of his employer. Shortly before this, defendant Jansen, driver of a truck belonging to defendant Roeder, who had been engaged in buying cattle during the day, drove around the barricade and proceeded east along the newly laid highway. Petersen saw the Jansen truck when it was five or six hundred feet away from him and was conscious of its presence as an approaching vehicle from that time until the time of the accident.

Plaintiff's principal contention is that defendant, who passed the barricade shutting off this highway and who violated the notices prohibiting its use, traveled the closed highway at his peril; that he was a trespasser; and that plaintiff, an employee of the road contractor, acting in the course of his duties, owed defendant no duty of care. Plaintiff relies upon *Fenske v. Kramp Construction Co.* 207 Wis. 397, 241 N. W. 349, and *Shawano County v. Froemming Bros.* 186 Wis. 491, 202 N. W. 186. We do not deem these

cases controlling. They involved situations where either the state, county, municipality, or contractor in the possession of the highway for the purposes of repairs was sued because of its dangerous condition as a result of such repairs. It was held that, having erected barricades and otherwise notified the public that the road was withdrawn from use as a public highway, no duty to keep it in reasonable repair was owed to those who violated the orders, and no rights were created in persons injured as a result of its dangerous or unsafe condition. This case does not involve such a condition. There was a twenty-foot strip of usable and perfectly safe concrete roadway. The highway not only was in repair but had never been out of repair. What is heretofore said does not mean that the state of the operations and the fact that the road was closed to public travel is not a material circumstance in the case. It may be material even in a collision case that one of the parties to the collision is working on the highway and that the other is violating the notices and without warrant using the highway for purposes of travel. Doubtless one of the purposes in closing the highway is to permit the employees of the contractor to pursue the work of repair or of construction without having to take into account travel along the way that is under construction. For example, the duty of a truck driver, working for a contractor, to watch for travelers on such a highway is certainly limited and probably nonexistent, since he would generally be entitled to assume that his use of the road would not be interrupted by members of the general public. This is not the instant case, however. Here plaintiff actually saw the Jansen-Roeder truck when it was five or six hundred feet away. He was thoroughly aware of its presence on the highway from that time to the time of the accident, and under these circumstances we consider that he owed the driver of that truck and its occupants the duty at least not to

increase their danger or injure them by active negligence. This rule would apply even if defendants be held to be trespassers. See *Brigman v. Fiske-Carter Const. Co.* 192 N. C. 791, 136 S. E. 125. The jury found him guilty of active negligence and of greater negligence than the defendants upon what seems to us to have been sufficient evidence. Under these circumstances the fact that the road was barricaded is of no materiality, and the principal contention of plaintiff must fail.

Error is assigned because the trial court instructed the jury that the statutory law of the road applied to both drivers. This was technically incorrect. Sec. 85.10 (21) (a), Stats., defines highway as follows:

"A highway is every way or place of whatever nature open to the use of the public as a matter of right for the purposes of vehicular travel. . . ."

Par. (d) of the same section thus defines a private highway:

"A private highway, alley or driveway is every highway, alley or driveway not open to the use of the public for the purposes of vehicular traffic."

It is apparent that in legal contemplation this road had not been opened to the public and was not theirs to travel as a matter of right. Hence, it did not have the status of a public highway. In *Patterson v. Edgerton Sand & Gravel Co.* 227 Wis. 11, 277 N. W. 636, this court held that the negligence of a driver on private property is not governed by the law of the road applicable to public highways. Although this unfinished road is literally within the definition of a private driveway, we shall not extend this opinion by considering whether this is its precise status. At all events, we deem the doctrine of the *Patterson Case, supra,* applicable, and statutory rules of the road for public highways

inapplicable. While the objection is technically sound, we do not consider that plaintiff was prejudiced. The duty of both parties driving on a road other than a public highway is to use due care as that term is understood at common law, and this requires that the drivers keep a proper lookout, maintain proper management and control, and when meeting each other drive on the right-hand side of the road. Since this highway was sufficient for the two vehicles to pass, if each carried out the duty of maintaining a proper line of travel, the duty to yield one half of the roadway is not involved in this case.

It is asserted that the court erred in failing to submit the question whether the negligence of Jansen in driving on an unopened highway was a cause of plaintiff's injuries. To give this instruction would be to apply the "but-for" rule to the case. Plaintiff seeks to avoid this conclusion by asserting that the absence of the center black line on the newly built highway operated as a cause. There is not any evidence, however, that this had anything to do with the accident, and there is no reason why it should have had anything to do with it. The concrete was twenty feet wide, there was plenty of room for the cars to pass, and the hazards were not appreciably increased by driving on such a highway.

The next contention is that the damages awarded to Petersen were so grossly inadequate as to indicate perversity. The jury assessed plaintiff's damages for pain and suffering at $350, for permanent injuries at $1,500, and for loss of earnings at $650. Petersen had a comminuted fracture of the elbow including a fracture of the upper end of the ulna and a fracture of the outer edge of the back part of the humerus. He had glass cuts on his face, bruises and contusions on his left thigh and chest. His arm was in splints for six weeks and in a sling for two and one-half additional weeks. He had no use of the left arm for three

months. He was in the hospital five days and thereafter for some time saw the doctor every other day. After leaving the hospital he remained at home for five days and then returned to work because there was nobody else to do the supervising and it was important to complete the contract on time. He had earned his living for years doing road and truck work, and in recent years had been foreman on various jobs. Besides supervising he ran grader and bulldozer machines, and was an expert operator of such machines. These machines have various levers that must be operated quickly by both hands and they produce a jarring during the operation. Since the accident he has been unable to run any of these machines and has only done supervisory work. Before the accident he claims to have received $60 a week. When he returned to work he claims to have received only $40 a week because he was unable to run a grader. His average pay for the last three years was $55 a week. He had lost nearly twenty pounds from the time of the accident to the time of the trial. The expert testimony was that the flexion, or movement of bringing the arm up toward the shoulder, is normally one hundred forty degrees, and Petersen had only one hundred ten degrees; extension, normally one hundred eighty degrees, was about one hundred sixty degrees; pronation, normally ninety degrees, was sixty degrees; supination, or turning the palm of the hand up, normally ninety degrees, was only sixty degrees. The opinion of the doctor was that due to ankylosis in the left elbow, Petersen cannot fully extend or flex his left arm, and in raising the arm cannot turn his forearm normally due to a solid bone union in the elbow with arthritic changes and roughening around the joint. The condition testified to is a permanent condition. He has a loss of lifting power from the floor amounting to forty per cent, and twenty-five per cent from the waist level. The grip of his left hand is forty

per cent normal, and the arm two inches shorter. On cross-examination defendant's counsel produced a report made by his employer to the industrial commission purporting to show Petersen's wages were $40 per week prior to the accident. Petersen testified in explanation that he received more from the Portage company than it reported to the commission, and the difference between what was reported under the PWA contract and what was paid to him was paid by the sand company. He claimed to have been unable to get the canceled checks to prove this point because of the absence of an officer of the sand and gravel company who was in possession of the canceled checks. Under these circumstances, it is claimed that the jury's assessment of damages is so inadequate as to establish perversity. The jury found $2,500 damages for a broken arm and to these are added damage to car and medical and hospital bills, to bring the verdict up to $3,286.20. While the assessment was distinctly on the conservative side, we cannot say that it was so low as to indicate that the verdict was the result of passion or prejudice. The jury evidently concluded that Petersen was being paid $40 and not $60 per week at the time he was injured, and that he returned to work at the same wage within two weeks. We cannot say that this conclusion is not supported by the record, and if we could, that would be far from establishing that the verdict as a whole was perverse.

Numerous other errors are assigned and are ably argued, but we consider that their detailed consideration would unduly extend this opinion without performing a useful service. We have carefully examined each assignment and are of the opinion that no prejudicial error was committed.

*By the Court.*—Judgment affirmed.