BETTY LOU BRESLEY, APPELLEE, v. O'CONNOR INCORPORATED ET AL., APPELLANTS.

80 N. W. 2d 711

Filed January 25, 1957. No. 34034.

*John E. Dougherty*, for appellants.

*Wear, Boland & Mullin* and *Robert E. McCormack*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Betty Lou Bresley, plaintiff, in the district court for Polk County, against O'Connor Incorporated, Ray F. O'Connor, and Derald L. Nelson, defendants, to recover damages for personal injuries sustained by the plaintiff resulting from a collision between the automobile in which she was riding as a guest, being driven by her husband Milo Bresley, and an International tractor and semitrailer being driven by Derald L. Nelson, an employee of O'Connor Incorporated. The trial was had to a jury which returned a verdict in favor of the plaintiff for $17,500. Each of the defendants separately filed a motion for new trial, all of which motions were overruled. From the order overruling the motions for new trial, the defendants appeal.

The accident occurred on November 7, 1954, at about 8:20 p.m., at the intersection of State Highway 92 and U. S. Highway No. 30A with U. S. Highway No. 81, at a point 3 miles west of Osceola in Polk County. State Highway No. 92 and U. S. Highway No. 30A are the same in this area, and will be referred to as Highway No. 30A. U. S. Highway No. 81 will be referred to as Highway No. 81. The automobile in which the plaintiff was riding will be referred to as the Bresley car; the International tractor and semitrailer as above designated as the de-

fendants' truck or unit; Betty Lou Bresley as plaintiff; and the defendants' driver as Nelson.

Highway No. 30A runs east and west and intersects Highway No. 81 from the south. There is a county road from the north that intersects Highways Nos. 30A and 81. There are cement islands dividing east-west traffic lanes on Highway No. 30A. There is a storage area which extends 375 feet east of the junction of Highways Nos. 30A and 81, for westbound vehicles desiring to execute a left turn. The intersection is 49 feet wide from the north edge of Highway No. 30A south to the north point of the cement island dividing Highway No. 81 as it intersects from the south. From the north edge of the storage portion of the island running east of the junction to the northernmost point of the island dividing Highway No. 81 from the south, is 21 feet. The island dividing Highway No. 30A west of the intersection has no refuge area. Highway No. 30A is level and free from curves or obstructions for a considerable distance both east and west of the junction. The intersection is a four-way intersection. There were no stop signs or traffic control signs of any kind facing eastbound traffic on Highway No. 30A at the time of the accident. The weather was good; and the highway was dry and in good traveling condition.

The record discloses that the plaintiff's husband, an officer in the Air Force stationed at Offutt Air Force Base at Omaha, formerly lived at Ord, Nebraska, and had made a trip to Ord to visit his parents, leaving Omaha after work on Friday night before the accident. He was driving a 1951 Mercury automobile and was accompanied by his wife, the plaintiff. They left Ord about 6 p.m., Sunday. The plaintiff sat in the front seat next to her husband. When they left Ord they followed the main-traveled highway to St. Paul where they stopped for a few minutes, then drove south of St. Paul 2 or 3 miles and turned to the east on Highway No. 92. The route of Highway No. 92 brought them to the viaduct north-

east of Central City. Passing over the viaduct, they proceeded east on Highway No. 30A. They observed no obstacles such as barricades or flares blocking the highway. They proceeded east on Highway No. 30A which was newly paved. The new pavement started 2 or 3 miles after they crossed the viaduct and continued down to the point where the accident occurred. The car was in good mechanical condition, and a speed of 45 miles an hour was maintained most of the time. The lights were on. They observed other traffic on the highway as they drove east from the viaduct to the scene of the accident. As the Bresley car proceeded east at 45 miles an hour and was 500 or 600 feet from the intersection, the driver noticed westbound traffic traveling on the north side of the highway. All he could see at that distance was bright lights approaching from the east. He started to slow down, and had his foot off the footfeed with no intention of going through the intersection. He placed his foot on the brake. He dimmed his lights several times, changed from high beam to low beam, in an endeavor to get the oncoming vehicle to dim its lights. No change was noted in the headlights of the oncoming vehicle. When plaintiff's driver arrived 70 or 80 feet from the intersection, he noticed the vehicle approaching from the east starting to cut across the south section of the north part of the highway. The vehicle was turning to the left onto Highway No. 81 to proceed south, and was traveling in a southwesterly direction across the intersection. It started to turn before getting to the center line of the highway and did not slow down from the time it first went into the turn until the time of the impact. He estimated the speed of the vehicle at about 15 miles an hour. The Bresley car, when 70 or 80 feet from the intersection, was traveling close to 35 miles an hour. In going into the intersection with its wheels sliding, it was traveling about 4 miles an hour. It swerved slightly to the right when it arrived at the intersection and was practically standing still at the time

of impact. The left side of the Bresley car and the right front of the truck came together. After the impact, the Bresley car was moved approximately 3 feet sideways to the southwest. The driver of the Bresley car did not sound its horn, neither did the driver of the truck. After the impact, the plaintiff was slumped over in the front seat. She appeared to be unconscious, was bleeding from the head, and was in pain. She recovered so she could talk to her husband, and remained in the car until the ambulance came to take her to the Osceola hospital.

The plaintiff's driver further testified that all of the Bresley car was on Highway No. 81 at the time of the impact; that when the Bresley car was 60, 70, or 80 feet west of the intersection he applied the brakes and tried to stop; and that any vehicle coming west had the possibility of proceeding straight west, turning to the right to proceed north, turning to the left to proceed south, or pulling into the storage lane and stopping until eastbound traffic cleared the intersection.

The defendants' driver testified that defendants' truck was equipped with two lights on each corner, a cluster of three lights and four stop lights on the rear, but there was no mechanical signal on the truck. The over-all length of the truck and trailer was 45 feet. He was hauling a cargo of 18 tons. He left Weston, Nebraska, at about 6:30 p.m., and stopped at Shelby about 15 minutes to check the clearance lights and replace a bulb in the cluster at the back of the trailer. He then left Shelby for Hutchinson, Kansas. He followed Highway No. 30A up to the junction of Highway No. 81 where the accident happened. As he proceeded out of Osceola he passed a truck just over the crest of a hill. His speed at that time was 40 to 42 miles an hour. After passing the truck he pulled back into his lane of traffic and stayed there until he arrived at the storage space. He was traveling 15 to 20 miles an hour at that time. He pulled into the storage space. The lights on his truck

were on low beam as he came close to the intersection, and about half way through the storage space he gave a signal with his left arm to indicate a turn to the left. He continued to retain the signal up to the time he started to make the turn. At the time he gave the signal, he slowed the truck down. Just before he made the turn he shifted into third gear, which is a good pulling gear. When he first saw the Bresley car it was some distance to the west. He could not estimate the distance. His truck was then 10 or 15 feet from the corner of the intersection. He made a turn to the southwest. The tractor was almost across the eastbound lane and its front end could have been a little on Highway No. 81 at the time of the impact. He heard no sound of a horn coming from a westerly direction. He heard brakes squealing. The impact caused the truck to slide to the east a few feet. After the impact, the rear wheels of the truck were still on Highway No. 30A and the tractor part of the unit was on Highway No. 81.

On cross-examination he testified that he swung the front end of the defendants' unit toward the west to enable the trailer to clear the island, proceeding in a southwesterly direction sometime before going into the turn. When he saw the Bresley car just a moment before the impact, he did not turn his wheel to try to avoid the accident, but proceeded straight into the side of the Bresley car at 10 miles an hour.

The plaintiff testified that she saw nothing unusual while proceeding east on Highway No. 30A. Getting close to the point of the accident, she remembered seeing headlights in the distance coming from the east. The radio on the dashboard of the Bresley car was turned on. She was bending over it, trying to dial to a different station. She then noticed a slight change in the speed of the Bresley car. The car seemed to be slowing down a little. She glanced at the road and could see in the distance what appeared to be an intersection. She did not think anything about it. She glanced at the speedo-

meter and noticed the speed was 40 miles an hour. After feeling the car decelerate, she went back to dialing the radio. The next thing she knew her husband slammed on the brakes and yelled. He swerved the car to the right, and as this was happening there were two headlights shining in her face. That was the last she remembered. When she first regained consciousness she was slumped over in the front seat.

A state patrolman investigated the accident, arriving at the scene about 9:30 p.m. Neither the plaintiff nor the driver of the Bresley car was there. The driver of the defendants' truck was there. The vehicles were in the same position they were in at the time of the accident. The left side of the Bresley car was damaged. The right front of the truck was damaged. The eastbound car laid down skid marks from all four wheels for a distance of 64 feet toward the southeast. The patrolman was unable to find any skid marks made by the truck. The defendants' driver gave his speed as 15 to 20 miles an hour. There is an island that divides Highway No. 81 as it comes from the south toward the intersection. The Bresley car was approximately 3 feet west of the island and approximately in line with the south edge of the pavement running east and west, facing in a southeasterly direction with the rear wheels of the car about in line with the south edge of the pavement. The driver of the truck stated that he was going west on Highway No. 30A. He started to pull over to the left-hand side of the highway to make a left turn. He saw a car coming from the west. He thought this car would stop, because he was under the impression that the road to the west was closed. He signaled for a left turn and proceeded to turn to the left. When this witness contacted the driver of the Bresley car, he said he was traveling east; that he saw the headlights of oncoming traffic; and that he slowed down and the truck turned directly in front of him. He saw no turn signals on the truck. The storage area for traffic going west is

for a vehicle attempting to make a left turn to turn into so that vehicles behind will be able to pass in safety, and to give the vehicle making the turn a space of refuge to stop in and wait for oncoming traffic and be out of the main-traveled portion of the highway.

A trucker proceeding west out of Osceola on Highway No. 30A the evening of the accident testified that there is a rise approximately half a mile east of the intersection. While he was driving on the crest of this hill at a speed of 35 miles an hour, a truck going faster than he was, at a speed of approximately 45 miles an hour, passed him and then slowed down. He closed in on this truck and was 400 to 500 feet back of it when it started to make a turn to the left. At that time he saw lights coming from the opposite direction. He believed the car coming from the west was 1,000 to 1,500 feet from the intersection when he first saw it. The truck was approximately 200 feet from the intersection. The truck pulled into the storage space and started to make the turn. The stop lights of the truck were on for some time. He estimated the speed of the truck at 15 to 20 miles an hour when it started to negotiate the turn to the south onto Highway No. 81. He could not see a signal given by the driver of the truck, and was in no position to see the car approaching from the west. Neither did he see the impact. The turn made by the truck driver was a "sharp" turn. He did not hear the defendants' driver sound a horn. The impact occurred in the southwest quarter of the intersection.

The defendants contend that the evidence is insufficient to sustain the verdict, and that the verdict is contrary to law.

In connection with this assignment of error, the defendants assert that the plaintiff and her husband, at the time of the accident, had full knowledge and notice that the highway upon which they were traveling was closed to traffic.

Section 39-741, R. R. S. 1943, provides in part: "(5)

The term 'highway' includes every way or place of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel, but shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions. (6) The term 'private road or driveway' includes every road or driveway not open to the use of the public for purposes of vehicular travel. (7) The term 'intersection' includes the area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

The defendants contend that the highway involved in the instant case was not opened officially for travel until the Monday following the accident which occurred on Sunday night, therefore, the road was not a public highway and the rules of the road were not applicable thereto for the reason that the Bresley car would be the same as proceeding from a private driveway; that a higher degree of care is required of a driver entering a public highway from a private driveway; and that such driver is required to yield the right-of-way to vehicles approaching on such public highway. § 39-752, R. R. S. 1943.

There is considerable testimony with reference to the highway in question being under construction and the placing of detour signs, blockades, and other warning signs to travelers not to drive on the highway. The highway was completed some 2 weeks or 30 days prior to its being officially opened, and was used by the public without interference on the part of public officials, and apparently with their knowledge and consent. In the vicinity of the accident and at the intersection there were no warning signs, flares, or warning devices of any type or kind to put a traveler on notice that the highway was closed. There was nothing to indicate or bring notice to the plaintiff or the driver of the Bresley

car that the highway was not open to the public for travel.

Does the fact that the highway was not officially opened until the day following the accident raise the question as to whether or not the intersection of Highway No. 30A and Highway No. 81 was actually an intersection within the meaning of the statute providing rules of the road to be observed at intersecting streets and highways? Does this fact also raise the question that the Bresley car was being driven on a private way, charging such driver with a higher duty of care in approaching and entering a main highway than he would be charged with in operating a vehicle on a main highway?

In Nygaard v. Stull, 146 Neb. 736, 21 N. W. 2d 595, this court held: "The rules of the road fixed by section 39-741, R. S. 1943, extend to all public highways, however created, and to all roads not public highways if used for travel by the public." It must be concluded that the Bresley car was traveling on a public highway and not on a private road, and Highway No. 30A and Highway No. 81 intersect where the accident occurred. Within the meaning of the statute, it is an intersection.

Our research discloses no Nebraska cases similar to the case at bar involving the question of open and closed highways. There are cases from other jurisdictions that deal with the question. Petersen v. Jansen, 236 Wis. 292, 295 N. W. 30, involved an automobile accident which occurred on a newly-laid state highway which had not been opened to public travel, was barricaded to prevent its use as a highway, and was placarded with a sign prohibiting public use as such. There was a 20-foot strip of usable, perfectly safe highway. The plaintiff was an employee of the contractor and was using the highway for business purposes. The defendant drove around a barricade and proceeded along the newly-laid highway. The plaintiff saw the defendant 500 or 600 feet away from him. He was conscious of the approaching vehicle until the time of the accident. The plaintiff's

principal contention was that the defendant, who passed the barricade shutting off this highway and who violated the notice prohibiting its use for travel, traveled the closed highway at his peril, and that he was a trespasser. The court said that the plaintiff was aware of the defendant's truck being on the highway from the time he saw it until the time of the accident; and that the plaintiff owed the driver of the truck and its occupants the duty at least not to increase their danger or injure them by active negligence. This rule would apply even if defendants were held to be trespassers. The jury found him guilty of active negligence and of greater negligence than the defendant. Under these circumstances, the fact that the road was barricaded was of no materiality, and the principal contention of the plaintiff must fail. The court did state that the statutory rules of the road were not applicable.

A case more closely in point is Pestotnik v. Balliet, 233 Iowa 1047, 10 N. W. 2d 99, which involved an accident that occurred on a cutoff that had been recently constructed and not officially open for travel, but was being used by the public generally. The appellant argued that the statutes relative to the law of the road did not apply, in that the record failed to show that either the cutoff or Highway No. 169 were open for vehicular travel. There was some evidence that there were signs on the cutoff and on Highway No. 30 to the effect that the cutoff was under construction. There was nothing to indicate that Highway No. 169 was officially closed. The cutoff was not officially open the day of the accident. The defendant admitted that while coming onto the cutoff from Highway No. 30, he noticed a sign "Road under construction." The court said: "We do not think that construction work on the highways would nullify or render inoperative the rules of the road."

The fact that the highway may not have been officially reopened by edict of the Department of Roads and

Irrigation is of no materiality under the facts of the instant case. The statutory rules of the road are applicable. The defendants' contention is without merit.

The defendants contend that the trial court erred in not submitting to the jury the question of contributory negligence on the part of the plaintiff. The defendants pleaded contributory negligence on the part of the plaintiff which, cooperating and concurring with the negligence of her husband, the driver of the car in which the plaintiff was riding, was the proximate cause of the accident.

The defendants assert that the plaintiff was riding in the front seat; that she felt the car decelerate 500 or 600 feet back of the intersection; that she looked up and knew they were approaching the intersection; that she could see the lights of a vehicle approaching from the east coming west on the north side of the highway; and that she returned to tuning the car radio and paid no further attention, nor did she say anything to her husband or do anything for her own safety. The plaintiff had no knowledge of any negligent driving on the part of her host, or of impending danger on the highway. There is nothing to indicate that the plaintiff should have known that the highway was not officially open to travel, nor was she required to anticipate just what movement the truck would make.

This court, on many occasions, has passed upon the duty of a guest riding in a car to the host. In Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466, this court said: " 'Ordinarily, the guest passenger in an automobile has a right to assume that the driver is a reasonably safe and careful driver; and the duty to warn him does not arise until some fact or situation out of the usual and ordinary is presented.' Lewis v. Rapid Transit Lines, 126 Neb. 158, 252 N. W. 804. See, also, Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178."

"The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that

of an ordinarily prudent person under like circumstances. The guest is not required to use the same degree of care as devolves upon the driver. If the guest perceives danger, or if at certain times and places should anticipate danger, he should warn the driver. Ordinarily the guest need not watch the road or advise the driver in the management of the automobile." Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854.

Where there is no evidence to sustain a finding of contributory negligence it is error to instruct on the subject and thereby submit to the jury an issue not supported by evidence. See Scott v. Service Pipe Line Co., 159 Neb. 36, 65 N. W. 2d 219. The trial court did not err in not submitting the issue of contributory negligence to the jury.

The defendants complain of rulings made by the trial court in striking certain testimony of defendants' driver, Nelson; in permitting, over objections, a witness to testify that he had not been arrested for using the highway; and in sustaining objections to patrolman Clark's testimony with reference to certain road signs and detour signs. With reference to the last proposition, there was evidence of other witnesses as to road signs and detour signs on this highway. We find no prejudicial error in the ruling of the trial court. In any event, it was at most harmless error and insufficient to cause a reversal of the judgment. See Gorman v. Bratka, 139 Neb. 84, 296 N. W. 456.

The defendants contend that the trial court erred in admitting the expectancy tables in evidence for the reason that there was no evidence introduced by the plaintiff that the injuries sustained by her were of a permanent nature, citing Welstead v. Ryan Const. Co., 160 Neb. 87, 69 N. W. 2d 308.

The life expectancy tables were admitted into evidence upon testimony of both plaintiff and defense specialists that the plaintiff was disabled with pain at the time of trial, some 14 months following the accident.

The plaintiff's doctor testified this pain might last for a period of months, or it might continue indefinitely. The defendants' specialist found no functional disability, but testified that while the pain itself was evidence of permanent disability, he expected the pain to lessen with the passage of time. The plaintiff and all the doctors were allowed to testify with reference to continued pain, its probable duration, and the conclusion that this was the only permanent disability involved. Dr. Redgwick was permitted to testify without objection concerning the sizeable extent of the callus formation, the lasting effect of traumatic miscarriage, and the permanent disability associated with Caesarean sections. The defense made no effort to exclude any of this testimony. The evidence tends to show eight serious fractures in vital portions of plaintiff's body, a brain concussion resulting in temporary unconsciousness, and a lessening of plaintiff's chances to ever again give a normal birth. The evidence tended to prove some permanent injury and disability to the plaintiff, but this issue was not submitted to the jury. The record discloses no indication that the admission of the expectancy tables into evidence prejudiced the jury. See, Lyons v. Joseph, 124 Neb. 442, 246 N. W. 859; Mischo v. Von Dohren, 126 Neb. 164, 252 N. W. 830.

The defendants contend that the verdict was excessive. The record discloses that the plaintiff sustained a brain concussion which caused a temporary loss of consciousness, a severe laceration of her head which eventually resulted in suturing, severe shock, bleeding, continuous pain, and mental anguish. Her pelvic bones were fractured in three places, on both sides of the pubic bone and in the sacrum area, and four of her ribs were fractured, plus a fractured vertebra. She was removed from the Osceola hospital and transferred to the Offutt Air Force Base hospital. She underwent 7 days and nights of irregular child labor without the benefit of heavy narcotics to relieve the pain, and then underwent

surgery in giving premature birth to her child. She spent 26 more days in the hospital, suffering pain from her fractures. The next 10 days she spent on crutches, followed by 13 months of backache, rib ache, shoulder ache, and limping about the house. She was unable to do her housework or engage in any of her normal recreational activities. There is no showing in the record to indicate passion or prejudice on the part of the jury in arriving at the verdict.

"A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186.

"The question of the amount of damage is one solely for the jury and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of injury and damage proved." Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643. See, also, Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627.

We conclude that under the evidence and the cited authorities the verdict is not excessive.

The defendants contend that the trial court erred in submitting to the jury the question of the negligence of defendants' driver in failing to sound his horn.

In instruction No. 1, the court recited the charges of negligence pleaded by the plaintiff among which was the following: "He (defendants' driver) failed to make timely sounding of his horn at any time before the collision when to have done so might have avoided the accident." The defendants assert that defendants' driver was excused from sounding his horn because the driver of the car in which the plaintiff was riding had knowledge of the truck approaching from the east when he was 500 or 600 feet distant from where the accident oc-

curred. The evidence shows that at that time the truck was proceeding straight west on the north side of the cement island and could have in no way affected the movement of the Bresley car if its driver had continued straight west, turned to the right, or stopped in the storage lane to permit eastbound traffic to clear the intersection. It was the turning to the left across the lane of traffic going east which created the emergency, and if defendants' driver had sounded his horn just before making the turn or while in the process of making the turn, an accident might have been avoided.

"The duty of a driver of a motor vehicle to sound a horn or give a warning of its approach is not an absolute one but it depends upon the circumstances." Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496.

The plaintiff had no advance warning that the automobile she was riding in would suddenly cross paths with a second vehicle proceeding due west as the truck was doing. We conclude that the trial court did not commit prejudicial error as contended for by the defendants.

The defendants complain of instruction No. 1, that the defendants' driver failed to yield the right-of-way at the intersection, wherein the court, in reciting the charges of negligence in the plaintiff's petition, stated: "He failed to yield the right of way to the plaintiff vehicle which was proceeding eastward in its own proper lane of traffic." The court instructed the jury on the rules of the road as the same apply to the instant case. The defendants do not attack such instructions.

Regardless of which vehicle may have entered the intersection first, the defendants' driver acquired no right-of-way to make the turn to the left until he gave a visible signal of his intention to do so. The arm signal which defendants' driver claimed he made could in no event be seen by the occupants of the Bresley car. The truck was not equipped with signal lights. The trial court did not commit prejudicial error as contended for by the defendants.

The defendants complain that the trial court erred in giving instructions Nos. 21 and 22 on its own motion. These instructions had to do with the question as to whether or not the highway was open to public travel. This phase of the case has been discussed previously. As to instruction No. 21, it defined the term "highway" as provided for by statute. The court then told the jury: "Therefore if you find that on November 7, 1954 at the time of this accident the public highway between Clarks and the intersection of highways 30-A - 92 and 81 was not open to public traffic you will find that the machine in which plaintiff was riding was not, while on that section of the road, upon a public highway."

Instruction No. 22 is as follows: "Considerable evidence has been introduced relating to the question of whether or not highway 30-A and 92 west of the intersection where the accident occurred was closed or open for traffic. You should consider this evidence together with all of the other evidence in the case in determining whether or not under the rules set out in these instructions the driver of defendants' truck and the driver of the car in which plaintiff was riding exercised due care considering the condition of the highway and the traffic thereon."

The objection to the instructions is that they are in conflict and that one nullifies the other. It is apparent that the defendants make no objection to instruction No. 21, it being almost identical with an instruction tendered by the defendants on this subject. What instruction No. 22 did was to submit to the jury the question of whether or not each of the drivers exercised due care considering the situation, the circumstances, the condition of the highway, and traffic thereon. We find no prejudicial error in the giving of such instructions.

The defendants complain of instruction No. 3 wherein the trial court virtually copied the reply of the plaintiff. This instruction had reference to the plaintiff's

driver having the Bresley car under reasonable control and operating it at all times as a reasonable and prudent person, and, in addition, in copying that part of the reply to the effect that the highway was open to members of the general public 2 weeks prior to the time of the accident. The defendants assert such facts are not sustained by the evidence and the trial court committed prejudicial error by copying that part of the reply in instruction No. 3.

In Remmenga v. Selk, *supra,* this court said: "While this court has frequently criticized the practice of copying pleadings into the instructions as a method of stating the issues to the jury, such practice does not constitute reversible error unless it has resulted in prejudice to the complaining party. The criticism is based primarily on the danger of including allegations of negligence upon which no evidence has been offered. It is fundamental, of course, that it is reversible error to submit issues to a jury upon which no evidence has been offered. Where pleadings, though voluminous, are copied into the instructions as a statement of the issues to be determined, no error can be predicated thereon if there is evidence to sustain all the pertinent allegations included therein and prejudice to the complaining party does not otherwise appear. Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439."

We do not think the jury could have been misled by the language in view of the instructions as a whole, and therefore come to the conclusion that the trial court did not commit prejudicial error.

The defendants contend that instruction No. 23 given by the trial court was prejudicially erroneous.

Instruction No. 23 reads as follows: "If you find for the plaintiff you will then proceed to assess the amount of plaintiff's damages at such sum as will fairly and reasonably compensate her for any and all injury, pain, suffering and loss which the evidence shows with

reasonable certainty proximately to have been caused by defendants' negligence. You should also consider and make allowance for any future pain and suffering of plaintiff if you find that the evidence shows with reasonable certainty that she will have such, as a result of defendants' negligence, and if the evidence also shows with reasonable certainty how long it will continue. No allowance should be made upon the basis of conjecture or guess."

The defendants' objection to the instruction is that it submits to the jury the question of future pain and suffering of the plaintiff which is not sustained by the record with reasonable certainty. The evidence shows that prior to the accident the plaintiff was in good health. The plaintiff suffered pain immediately after the accident occurred and was suffering pain at the time of trial. According to the medical testimony, the plaintiff would continue to suffer pain in the future for an undeterminable period. The court, by giving such instruction, did nothing more than permit the jury to make allowance for such future pain and suffering of plaintiff as might be established by the evidence with reasonable certainty, contingent upon the evidence also showing with reasonable certainty how long such future pain and suffering might continue, and subject to the warning of the court that no allowance should be made upon the basis of conjecture or guess.

A plaintiff is required to prove that there is a reasonable certainty of future pain and suffering. See Crecelius v. Gamble-Skogmo, Inc., *supra*. See, also, McDuffie v. Root, 300 Mich. 286, 1 N. W. 2d 544.

We find the evidence sufficient to warrant submission of this issue to the jury, and the giving of the above instruction did not constitute prejudicial error.

Where instructions given, considered in their entirety, fairly and adequately state the law, they are sufficient. See, Clausen v. Johnson, 124 Neb. 280, 246 N. W. 458;

In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526; Brown v. Hyslop, 153 Neb. 669, 45 N. W. 2d 743.

The verdict of the jury is amply sustained by the evidence. The judgment is affirmed.

AFFIRMED.