Mabel FELDMAN, Plaintiff (Appellant),

v.

Mary Ann LEWIS, Defendant (Respondent).

No. 30611.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1960.

---

1. Now Civil Rule 83.05, V.A.M.R.

Jerome J. Duff, George W. Cloyd, and R. J. Slater, St. Louis, for appellant.

Whalen, O'Connor & Grauel, Fred B. Whalen, St. Louis, for respondent.

DOERNER, Commissioner.

Plaintiff appeals from a judgment for $2,500 rendered against her on the defendant's counterclaim, in an action which arose out of a collision between cars being driven by the parties on the parking lot of a shopping center located in St. Louis County.

The parking lot was located on the northeast corner of Woodson Road and Bataan Avenue. Woodson, a north-south street, formed its western boundary, and Bataan, an east-west street, its southern boundary. It was approximately 500 to 600 feet long,

from north to south, and about 100 to 150 feet wide, from east to west. The store buildings extended along the eastern side of the tract. Three driveways, of sufficient width to accommodate two-way traffic, ran from Woodson Road to the buildings, one being located toward the north end of the lot, another in the center, and the third toward the south end. Parking spaces for three rows of cars were marked off on the blacktop surface of the lot. One row extended along Woodson Road; a second and single row was provided for in the middle of the lot; and a third row ran across the eastern side, in front of the stores. The markings provided for angle parking, and when the spaces were occupied by automobiles there were then left two aisles extending from the northern to the southern end of the lot, one of which, the westernmost, had an exit to Bataan Avenue. Presumably the parking lot was reasonably level, for there was no evidence that its topography played any part in the collision.

On the date in question, according to plaintiff, the parking lot was rather tightly packed with automobiles. The weather was overcast. It had rained earlier in the day and the blacktop paving was damp.

The collision occurred on April 3, 1957, at about 4:00 p. m., at the intersection of the southernmost driveway and the westernmost aisle. Plaintiff had patronized a store at the northern end of the shopping center, and was driving southwardly down the westernmost aisle, intending to turn into Bataan Avenue. Defendant's car had been parked in a space in the easternmost aisle, near the southernmost driveway. Upon completing her purchases, defendant drove a short distance to the southernmost east-west driveway, turned to her right, and according to her testimony had proceeded westwardly a distance of about 20 feet when the collision occurred. Both parties agreed that there was a truck parked at the northeast corner of the intersection which tended to obscure each driver's view of the other vehicle.

There was a sharp dispute in the evidence regarding the manner in which the collision occurred. Plaintiff's testimony was that as she approached the intersection she was traveling less than five miles per hour, with the right side of her car about three feet from the automobiles parked on her right; that she could not see either to the east or west until the "nose" of her car was into the driveway; that as she proceeded into the driveway she glanced first to her right and then to her left, and that she then saw the defendant's automobile about a car's length, or less, distant from her; that she did not hear any horn sounded, and that the speed of defendant's car, which she could not estimate in miles per hour but which she described as "pretty fast," did not decrease from the time she first saw it until the impact occurred. Plaintiff insisted that the front end of defendant's automobile struck her car at the left front door, and that the vehicles were at right angles at the time the collision occurred. She testified further that as a result of the impact, she was thrown about and lost control of her car, which moved forward and to her left, and struck a second truck parked on the southeast corner of the intersection, damaging the front end of plaintiff's automobile.

Vincent Hagedorn, a witness for plaintiff, testified that he was standing to the east of the point of impact, and that he saw both automobiles at about the same time; and that the front end of defendant's car was seven or eight to ten feet east of the west end of the parked truck when the plaintiff's car first entered the intersection. He estimated the speed of plaintiff's car at ten miles per hour, and that of defendant's at 20–25, and stated that defendant's car struck the plaintiff's car. His testimony was that he did not see any brake lights on defendant's car before the impact occurred, and that the rear-end of defendant's car was clearly within his vision.

John Stuller, Assistant Chief of Police of Woodson Terrace, who was called to the

scene, described the damage to the vehicles involved and characterized that of the plaintiff's automobile as moderate on the left side and close to heavy on the front end, and that of defendant's car as moderate damage to the right front fender, headlight and bumper. He stated that he found no tire marks at the scene, and that the broken glass and debris he found in the east-west driveway was some few feet (never stated numerically) to the south and west of the truck, which was parked in the northeast corner of the intersection. His report showed that the plaintiff's explanation of what had occurred was, " * * * 'Was driving up to the parking lot and it happened so sudden, she wasn't sure what happened' * * *" and that defendant's explanation was " * * * 'She said Mrs. Feldman's car hit her car' * * *."

Defendant's testimony was that after she made a right turn into the driveway and proceeded westwardly at an estimated speed of five miles per hour, the right side of her car was about three feet from the southernmost part of the parked truck; that as she approached the intersection she had her foot off of the accelerator and poised on or over the brake pedal, and was trying to see around the truck, a box-like type of vehicle, which interfered with her vision to the right; that when the front end of her car was about two or three feet into the intersection she saw the plaintiff's car to her right, then about ten feet away, traveling at a speed she estimated at 25 to 30 miles per hour; that she immediately applied her brakes and came to a complete stop; that the speed of plaintiff's car did not diminish; that plaintiff's car swerved to the southwest, its left side struck the right front fender of defendant's car, then at rest four or five feet into the intersection, continued on 25 or 30 feet in a swerve to its left, and came to a stop when it hit the second truck mentioned in the evidence, which was parked at the southeast corner of the intersection.

There was evidence on behalf of both parties regarding the injuries each claimed to have sustained, but since it is not germane to the appeal it need not be stated.

Plaintiff's only allegations of error are directed at three instructions given at the request of the defendant. The first, Instruction No. 2, reads as follows:

"The Court instructs the jury that if you find and believe from the evidence in this case that on the occasion of the collision on the parking lot mentioned in the evidence, plaintiff operated her automobile at a rate of speed which was excessive and dangerous under the circumstances and conditions as shown by the evidence; or if you find she failed to give a warning by sounding the horn on her automobile of the approach and movement of her automobile before entering the intersection mentioned in the evidence; or if you find that by keeping a careful lookout to her left and ahead she would have discovered defendant's automobile proceeding west on the driveway in said parking lot in time thereafter to have prevented the collision; and if you further find that in all or any of the above particulars plaintiff failed to exercise ordinary care in operating her automobile and was negligent, and such negligence, if any, proximately caused or contributed to cause the collision in question, then you are instructed plaintiff is not entitled to recover in this case and your verdict must be in favor of defendant on plaintiff's cause of action."

One of the objections plaintiff levels at this instruction is that no facts were hypothesized by which the jury was required to resolve the conflict in the evidence, and that it gave the jury a roving commission to speculate, guess and conjecture on the issues of plaintiff's contributory negligence. When judged by the requirements of a verdict-directing instruction, it is obvious that Instruction No. 2 must be held to be erroneous. As the Supreme Court has repeatedly stated, the purpose of a verdict-directing instruction is to make clear to the

jury the essential fact issues which they are called upon to decide, and where the evidence relating to such issues is conflicting and divergent, some of it supporting and other portions opposing the particular verdict, the instructions should, in that event, hypothesize, either by express recital or by reference to other instructions, the facts essential in law to support the verdict, whether it be to direct or to defeat a right of recovery. Kimmich v. Berry, Mo., 319 S.W.2d 546; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496.

It is apparent from a mere reading of Instruction No. 2 that no facts were hypothesized except for the single fact that plaintiff was operating her automobile on the parking lot. Considering the first specification of negligence mentioned, that of speed, the jury was informed that they should find the plaintiff guilty of contributory negligence if they found that she had operated her automobile at a rate of speed which was " * * * excessive and dangerous under the circumstances and conditions as shown by the evidence * * *." The quoted phrase, or one closely similar thereto, has been the frequent subject of judicial consideration since the landmark case of Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541. See Dahlen v. Wright, Mo., 235 S.W.2d 366; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Hooper v. Conrad, supra; Myers v. Buchanan, Mo., 333 S.W. 2d 18. As was so lucidly pointed out by Judge Hyde in his concurring opinion in Hooper v. Conrad, supra [364 Mo. 176, 260 S.W.2d 502], the difficulty with the "under the circumstances" clause in the Yates case was " * * * that there were two completely different and directly conflicting sets of circumstances, so that the jury could not know from the instruction what circumstances were meant. Under one set of circumstances shown therein the southbound taxicab in which plaintiff was riding was proceeding slowly as it approached an intersection and was struck, after it passed the middle of the street, by the Manchester car

traveling east at a high rate of speed. Under another set of circumstances shown therein, the eastbound Manchester car was moving slowly in a line of traffic, following within ten feet of another car, when the taxicab going fast, cut around a halted line of southbound cars and was struck as it went through the eastbound line of traffic in front of the Manchester car."

■ A similar situation prevailed in this case. Here, under the circumstances shown by plaintiff's evidence, she was proceeding southwardly at a speed of five miles per hour or less as she approached the intersection, her automobile was the first to enter the intersection, and it was struck by the defendant's car, traveling westwardly, at a speed of 20 to 25 miles per hour. Under the circumstances shown by the defendant's evidence, prior to the collision her car had proceeded westwardly only the length of the parked truck, at a speed of five miles per hour, her car was the first to enter the intersection, it was at a complete stop at the time of the collision, when it was struck by plaintiff's automobile, traveling westwardly at a high rate of speed, as plaintiff sought to swerve her car in front of and around defendant's car. Since the evidence presented two divergent sets of facts, under only one of which plaintiff's right of recovery would be barred because of her contributory negligence, Instruction No. 2 was clearly erroneous for failure to hypothesize the facts essential to support a verdict for the defendant on the issue of plaintiff's excessive speed. Myers v. Buchanan, supra; Ferguson v. Betterton, supra; Dahlen v. Wright, supra.

■ In support of her contention that the instruction under consideration was not erroneous, defendant contends that it was not necessary for defendant to hypothesize in the instruction her estimate of plaintiff's rate of speed; and that if plaintiff felt the facts and circumstances were not clearly and sufficiently hypothesized, plaintiff should have offered a clarifying or ampli-

fying instruction, citing Hooper v. Conrad, supra. Assuming, without deciding, that defendant was not required to hypothesize that plaintiff was traveling at a speed of 25 to 30 miles per hour because it was only defendant's estimate, by which she was not bound, as defendant argues, the instruction is still erroneous, as pointed out, in failing to hypothesize the essential facts encompassed within the "under the circumstances" part of the instruction. See, in that respect, the suggested instruction in the concurring opinion in Hooper v. Conrad, supra. As to the second part of defendant's argument, that plaintiff should have offered a clarifying or amplifying instruction, the Supreme Court has said that the rule announced in Hooper v. Conrad, supra, requiring the opposing party to do so, has no application where, as here, there was a total lack of hypothesization of essential facts. Gaffner v. Alexander, Mo., 331 S.W.2d 622, 628.

Instruction No. 4, defendant's verdict-directing instruction on her counterclaim, is identical in language on the issue of plaintiff's excessive speed, and is likewise erroneous for failure to hypothesize attending circumstances of the facts of the same sort omitted in Instruction No. 2.

■■ Plaintiff's remaining objections to Instructions No. 2 and 4 are directed at the other assignments of negligence and contributory negligence. Since defendant submitted all such assignments in the disjunctive, the submission of one erroneous assignment rendered the entire instruction erroneous, Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64; Dahlen v. Wright, supra, and the case must be retried. Whether the instructions are otherwise prejudicially erroneous need not be determined because on retrial they can be easily redrafted in the light of the objections presently urged against them. Nydegger v. Mason, Mo., 315 S.W.2d 816.

■ Plaintiff's final contention is that Instruction No. 7, given at the request of the defendant, was erroneous because it was a mere abstract statement of the law, citing the concurring opinion of Judge Storckman in Herr v. Ruprecht, Mo., 331 S.W.2d 642, 651. Instruction No. 7 reads:

"The Court instructs the jury that at the time and place of the collision mentioned in the evidence it was the duty of both plaintiff and defendant to operate their automobiles in a careful and prudent manner and to exercise ordinary care for their own safety and the safety of others in the vicinity.

"The Court further instructs you that if under the evidence and the other instructions given to you in this case, you find that neither plaintiff nor defendant was exercising ordinary care in operating their respective automobiles at the time of the collision in question, if you so find, then your verdict in this case must be for the defendant on plaintiff's cause of action and for plaintiff on defendant's counterclaim."

It is apparent that Instruction No. 7 was not a mere abstract statement of the law since it incorporated by reference the other instructions which related to the issue of negligence. Such a practice was specifically approved in Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383, 389. Furthermore, the form of the instant instruction was approved in McDonald v. Logan, 364 Mo. 382, 261 S.W.2d 955.

■ However, as the Supreme Court pointed out in the Mavrakos case, a reference to other given instructions is not erroneous " * * * when the referred to instructions are correct." Here, as we have pointed out, defendant's Instructions No. 2 and No. 4 were erroneous, and it therefore follows that Instruction No. 7, by incorporating them by reference, was likewise erroneous for the reasons stated. Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 236 S.W.2d 758.

The judgment should be reversed and the cause remanded, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.