593 F.Supp. 634 (1984)
Roselyn ROBBINS and Jeffrey Robbins, Plaintiffs,
v.
UNITED STATES of America, Defendants.
No. 81-1566C(B).
United States District Court, E.D. Missouri, E.D.
July 18, 1984.
*635 James Hullverson, St. Louis, Mo., for plaintiffs.
Bruce D. White, Asst. U.S. Atty., St. Louis, Mo., for U.S.
William Evans, St. Louis, Mo., for Ronald Golden.
*636 Joseph Mueller, St. Louis, Mo., for McLean Trucking.

FINDINGS OF FACT
REGAN, District Judge.
1. Plaintiffs Roselyn Robbins and Jeffrey Robbins, a married couple, are residents of the State of Missouri. The incident giving rise to this cause of action occurred within the Eastern District of Missouri.
2. On June 9, 1979, the date of the incident involved herein, Marvin R. Loper (Loper), a Major in the United States Air Force, was permanently stationed at Offutt Air Force Base outside Omaha, Nebraska.
3. For several weeks prior to June 9, 1979, Major Loper was on temporary duty at Scott Air Force Base in Illinois. After receiving orders to report back to Offutt Air Base by June 10, 1979, Major Loper departed from Scott Air Base in his private pickup truck on June 9, 1979, and proceeded west toward Offutt Air Base.
4. Prior to the collision involved herein plaintiffs Jeffrey and Roselyn Robbins were proceeding west in their automobile on Interstate Highway 70 in Montgomery County, Missouri. As the plaintiffs approached Mineol, Missouri, at or about 4 p.m., they encountered an extremely heavy rainstorm. Hindered by poor visibility, Jeffrey Robbins pulled his vehicle completely onto the right shoulder of the highway where he parked it and waited for the rainstorm to subside.
5. At the point where the plaintiffs car was parked, the highway had two westbound traffic lanes with a shoulder on the right approximately twelve feet wide.
6. While plaintiffs waited for the storm to subside, a motorcyclist, David Ford, proceeding west on the highway, lost control of his motorcycle on the wet pavement, fell, and slid to a stop on the inside (the southernmost) lane of Highway 70 directly across from plaintiffs' vehicle.
7. Moments later a tractor-trailer owned by the McLean Trucking Company (McLean) and operated by Ray Taylor approached from the east and, to avoid colliding with the downed motorcyclist, came to a complete stop just east of the motorcycle in the inside westbound lane. The tractor-trailer remained parked there with its lights flashing to warn approaching traffic. The outside westbound lane was clear. The occurrence took place approximately one-third of the way down a gently sloping hill of approximately a mile in length.
8. After the McLean truck came to a stop, plaintiff Jeffrey Robbins left his automobile and went to the aid of David Ford, while plaintiff Roselyn Robbins remained in the automobile.
9. Jeffrey Robbins pulled David Ford to the grassy shoulder alongside the inside lane, when another (unidentified) tractor-trailer approached from the east. To avoid colliding with the McLean truck, the driver of the second tractor-trailer pulled his vehicle to the left of the McLean truck into the left shoulder area of the highway and struck a small bluff adjacent and parallel to the roadway. The driver of the second tractor trailer suffered a broken jaw and sustained other minor injuries as a result of this collision.
10. Sometime during the course of these events, Ronald A. Golden, also westbound, pulled his automobile onto the right shoulder of the highway, and parked it directly behind plaintiffs' automobile. The credible evidence demonstrates, and we so find, that the Golden vehicle was parked completely on the shoulder and off the traffic lanes of westbound Highway 70, and remained in that position with its lights on until it was struck by Loper's pick-up truck.
11. Roselyn Robbins was still seated in her vehicle when she observed the second tractor-trailer crash into the bluff. Believing that the driver of the tractor-trailer may have been injured, Mrs. Robbins (a registered nurse) got out of her vehicle for the purpose of aiding the driver. She stood on the shoulder in front of her automobile, facing south, intending to cross the highway when traffic was clear.
*637 12. At about this time Major Loper was approaching from the east in his pick-up truck, traveling in the inside lane of westbound Highway 70. After cresting the hill east of the McLean truck, Loper belatedly observed that the truck was blocking the inside traffic lane in which he was driving. Without reducing his speed, he attempted to pass the parked truck by steering his vehicle towards and into the clear outside lane. In doing so, however, he failed to keep his truck entirely within that lane, with the result that Loper's vehicle violently struck the rear of the Golden car, and the Golden car in turn struck plaintiffs' automobile. Plaintiffs' car was jolted forward by the force of the collision and struck and injured Roselyn Robbins.
13. At the time Major Loper's truck collided with the Golden vehicle the rainstorm had subsided somewhat, but the highway was still covered with running water and was extremely hazardous. The testimony of eye witnesses, which we credit, put the speed of Major Loper's vehicle at somewhere between 55 and 70 miles per hour.
14. We find that the speed at which Loper was driving was excessive under the prevailing circumstances. We further find that Loper's failure to timely discover the McLean truck and the vehicles parked on the shoulder and to reduce his speed demonstrates that he did not keep a careful lookout.
15. In our judgment, Major Loper failed to exercise the care which a very careful and prudent person would have exercised in the circumstances then prevailing. Had Loper operated his truck at a reasonable rate of speed under the existing circumstances and had he kept a careful lookout, he could have safely passed the McLean truck and kept his vehicle entirely within the right hand lane and thus have avoided the collision with Golden's automobile. His failures to do so, both singly and in combination, constituted negligence which proximately resulted in the damages sustained by plaintiffs.
16. Mrs. Robbins' legs were badly crushed by the accident and she was in excruciating physical pain and mental anguish while waiting for an ambulance which finally arrived 20 to 30 minutes later and transported Mrs. Robbins to the Hermann, Missouri, hospital. There, the doctors decided that their facilities were inadequate to treat Mrs. Robbins' injuries, and she was transported to the University of Missouri Medical Center in Columbia, Missouri, all the while, except for a very brief period under medication, still suffering excruciating pain.
17. Roselyn Robbins remained as a patient in the University of Missouri Medical Center for over four months. During that time she underwent 13 operations to repair her shattered legs. Her left leg was so badly injured that it had to be amputated, first below the knee and then, after the left knee failed to respond to treatment, just above the knee. In addition, Roselyn Robbins underwent numerous skin grafts to cover the severe wounds she sustained to her right leg.
18. Following her stay in the University of Missouri Medical Center, Roselyn Robbins was transferred to the Rusk Rehabilitation Center, where she remained for seven weeks. While in Rusk she was fitted with a prosthesis.
19. After her discharge from the Rehabilitation Center, Roselyn Robbins began working half-days in a wheelchair. The other half of her days were spent as an outpatient at the Rehabilitation Center, training on the prosthesis and strengthening her right leg. She continued as an outpatient of the Rehabilitation Center for six months. Eventually Mrs. Robbins returned to work full-time in September, 1980.
20. She had difficulty getting around in her two-story home and, because of the awkwardness of the prosthesis, she spends most of her time at home in a wheelchair. Mrs. Robbins was treated by a psychologist in 1980 and a psychiatrist in 1982 for depression and difficulty in adjusting to her change in lifestyle, work and marital situation.
*638 21. After numerous problems during her pregnancy (resulting from her physical condition), Mrs. Robbins gave birth to a normal, healthy son in May, 1983. Her condition makes caring for her child difficult in that she cannot walk and carry the baby at the same time; nor is she able to keep up with the child in their home.
22. Plaintiff Roselyn Robbins has suffered gross permanent disfigurement from the accident. Her right leg, which is permanently weaker than before the accident, has several long deep scars, and she is unable to walk without a pronounced limp and with great effort. Her right thigh has several deep holes. She regularly experiences "phantom pains" in her amputated leg. The difficulty Roselyn Robbins has with her prosthesis and her pronounced limp will never improve. She will always experience pain and discomfort by reason of her condition, as well as psychological depression.
23. The foregoing recitation of the injuries and damages of Roselyn Robbins does little more than furnish some indication of the nature and character thereof. In view of the fact that the nature and extent of her injuries are uncontradicted and undisputed, we deem it unnecessary to state such injuries more fully and adequately and in detail.
24. Plaintiff Roselyn Robbins lost wages amounting to $13,138.34.
25. Medical bills incurred for the care and treatment of Mrs. Robbins aggregate $20,021.48 for doctors and $43,749.78 for hospital charges at the University of Missouri Medical Center and Rusk Rehabilitation Center.
26. The accident has irreversibly changed the life styles of both plaintiffs. Prior thereto, they would bicycle together, take long walks, and dance, now no longer possible. Their social activities have been drastically limited.
27. As for Jeffrey Robbins, a research biologist, he has been required to curtail the time devoted to his work in order to be with and care for his wife. His normal work week had been 70 to 90 hours a week. Following the accident, he could work only 30 to 40 hours a week for a time, and by now the needs of his wife and her inability to do more than very light housework prevent him from working more than 50 to 60 hours a week. He is required to do all of the heavy housework and anything which requires reaching, pushing or pulling.
28. By reason of the accident and its aftermath, Jeffrey Robbins has for all practical purposes been deprived of the companionship and togetherness activities to which he was and is entitled. He must live with a wife who is in constant pain and depression and who has become much more reserved. His home life has unquestionably been seriously altered for the worse. The problems in connection with his wife's pregnancy will have a lasting effect on their conjugal relations.

CONCLUSIONS OF LAW
1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(b). All administrative remedies have been exhausted by plaintiffs as required by the Federal Tort Claims Act.
2. Under the Federal Tort Claims Act and 28 U.S.C. § 1346(b), the United States is liable for damages for personal injury caused by the negligent act of any employee of the Government while acting within the scope of his employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred.
3. Under Missouri law, an employer is liable for personal injury caused by the negligence of his employee while acting within the scope of his employment. Burks v. Leap, 413 S.W.2d 258, 266 (Mo. 1967). Such liability includes both the damages suffered by the wife and the damages to her husband for the loss of or interference with consortium resulting from the injury to his wife.
"Consortium" as used in this context includes the right of a husband to the *639 services of his spouse and his right to fully enjoy their society and companionship and conjugal relationship, in addition to the recovery of expenses necessarily incurred by him as the direct result of the negligent injury to his spouse.
4. Major Marvin Loper was acting within the scope and course of his employment at the time of the accident which gave rise to plaintiffs' claims. See Robbins v. U.S.A., 722 F.2d 387 (8 Cir.1983).
5. Under Missouri law, every operator of a motor vehicle on the highways must exercise the highest degree of care. Section 304.010.1 RSMo. The highest degree of care is that degree of care that a very careful and prudent person would use under the same or similar circumstances. MAI 11.01 (1981).
6. Major Loper's speed which was excessive under the conditions present at the time of the collision and his failure to keep a careful lookout and timely observe the McLean truck and the Golden vehicle constituted breaches of his duty to use the highest degree of care in operating his vehicle and were negligent.
7. Each of these acts of negligence by Major Loper were sufficient to cause, and did cause, the chain reaction involving the Loper truck, the Golden vehicle, the Robbins vehicle, and Roselyn Robbins, directly resulting in personal injury to Roselyn Robbins and loss of consortium to Jeffrey Robbins.
8. Each plaintiff is entitled to recover such sum as will be fair and just compensation for the damages sustained and is reasonably certain to be sustained in the future by such plaintiff as a direct result of the negligence of Major Loper.
9. After fully considering the extent of plaintiff Roselyn Robbins' injuries, her pain and suffering, her lost wages and her life expectancy, the Court assesses damages against the defendant United States and in favor of plaintiff Roselyn Robbins in the total amount of $ONE MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($1,750.000.00).
10. After fully considering plaintiff Jeffrey Robbins' loss of consortium, including loss of society, comfort, companionship and material services, as well as medical expenses, the Court assesses damages against the United States and in favor of plaintiff Jeffrey Robbins in the total amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00).

JUDGMENT
The Court having this day entered its findings of fact and conclusions of law herein finding the issues in favor of each of plaintiffs and against the defendant, NOW THEREFORE, in accordance therewith,
IT IS HEREBY ORDERED AND ADJUDGED
(1) that plaintiff Roselyn Robbins have and recover of and from the defendant United States of America the sum of $1,750,000.00 and costs, and
(2) that plaintiff Jeffrey Robbins have and recover of and from the defendant United States of America the sum of $250,000.00.