**James L. McTEER, Jr., and Daniel L. Richardson, Plaintiffs–Respondents,**

v.

**CLARKSON CONSTRUCTION COMPA-NY, INC., Defendant–Appellant.**

**No. 16537.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 11, 1991.

Mark A. Thornhill, Spencer, Fane, Britt & Browne, Kansas City, for defendant-appellant.

R. Lynn Myers, J.R. Victor, Springfield, for plaintiffs-respondents.

SHRUM, Judge.

On September 26, 1990, this district filed an opinion affirming the judgment. Thereafter, on October 17, 1990, this district denied appellant's motions for rehearing or to transfer to the Supreme Court. Appellant then filed applications for transfer with the Supreme Court. It sustained the applications on November 20, 1990. On April 9, 1991, the Supreme Court entered the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District." With the addition of this paragraph, our initial opinion is readopted. It is set out hereafter.

Plaintiff James McTeer (hereinafter called McTeer) drove his motor vehicle along a construction site, a graveled right-of-way, that was to be "new" highway 160, in Greene County at approximately 3:00 a.m., May 21, 1982, and struck a bridge floor which was approximately 7 1/2 inches above the road bed. Plaintiff Daniel Richardson (hereinafter Richardson) was a passenger in McTeer's automobile at the time of the accident. McTeer and Richardson sustained substantial injuries in the accident. They sued appellant[1] claiming the road was not reasonably safe for the public and that appellant had failed to warn of such alleged unsafe conditions. Upon trial to a jury, the jury assessed 100 percent of the fault to McTeer and 100 percent of the fault to Richardson. Timely post-trial motions were filed by McTeer and Richardson. The trial court overruled both motions for judgment notwithstanding the verdict but granted both parties' motions for new trial. Appellant appeals from the granting of the motions for new trial. This court affirms.

The trial court sustained McTeer's motion for new trial because of its perceived

---

1. Clarkson Construction Company, Inc., is a corporation and was the contractor who had the responsibility for laying the base rock on the road and then putting concrete on top on this highway construction project. The bridge had been built "a long time" but no approaches had been built to it.

error in submitting Instruction No. 3.[2] In sustaining McTeer's motion for new trial, the court said:

> [T]he Court has specifically errored [sic] in submitting Instruction # 3 applying to him [McTeer] a standard of care required of an operator of a motor vehicle upon a public highway, when, in fact, he was operating his automobile upon a roadway under construction which had not been opened to the public. The roadway under construction was a new construction and was not an existing roadway which had been closed for the purpose of construction. The roadway in question had never been a public highway or roadway.

In its first point, appellant claims the trial court erred in granting McTeer a new trial because Instruction No. 3 properly stated the duty of care owed by McTeer in driving on highway 160. At issue is whether the area where this accident happened is a "highway" within the meaning of § 304.010 so that the higher standard of care mandated by that statute is applicable; or, whether, because the road was under construction and had never officially been opened to the public, only ordinary care was required of McTeer in the operation of his motor vehicle. In deciding that issue, this court does not review the trial court's ruling with the oft-repeated statement that the granting of a new trial is discretionary with the trial court. This ruling is one of law, and this court reviews it unhindered by any presumption in favor of correctness.

*Ely v. Parsons,* 399 S.W.2d 613, 615 (Mo. App.1966).

A summary of the evidence as to the status of "new" highway 160 at the time of the accident follows. The highway (8.519 miles in length) was being constructed between interstate 44 and Willard, northwest of Springfield. Shortly before 3:00 a.m., McTeer (with Richardson in the passenger seat) drove north from Springfield on AB highway to "farm road 94" (a dirt or gravel road). He then drove "right" off of AB onto farm road 94 and continued on farm road 94. In doing so, he crossed over "new" highway 160 (old highway 160 was on the other side) and continued traveling on farm road 94 to farm road 115. Farm road 115 was paved and ran "generally" south toward town. McTeer headed south on farm road 115 until it intersected "new" highway 160. McTeer said he saw no barricades or signs across "new" highway 160.[3] He turned right onto "new" highway 160 and drove until the collision with the bridge occurred. It was 2,100 feet from the intersection of farm road 115 to the bridge where the accident happened.[4] The bridge had been built approximately a year before the accident. Appellant had laid the base rock "up to the bridge" but had not poured the concrete as of May 21, 1982. State highway engineer Jones testified that "new" highway 160 was not open to the public at the time of the accident. Jones said, "not open to the public" meant "it's not in the system yet at all. Whenever I receive a project it's not in the system, so it's not a public use area at all."[5] Ser-

---

**2.** Instruction No. 3 was MAI 11.08 Definitions–Negligence–Different Standards of Care and read: "The term 'negligent' or 'negligence' as applied to the driver of a motor vehicle means the failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances. The term 'negligent' or 'negligence' as applied to a passenger in a motor vehicle means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

**3.** McTeer had also testified that he saw no warning signs or barricades while on farm road 94. Highway Engineer Jones and others offered contrary evidence on that issue. There was also evidence that there were "road construction

ahead" signs on farm road 115 either side of new highway 160.

**4.** It was about 2,800 feet on down the road from the bridge where farm road 94 (where McTeer first crossed "new" highway 160) intersected "new" highway 160.

**5.** When asked if there was a difference between a road that's not open to the public and a road that the State closed, Jones replied: "One [closed road], we actually barricade it tight, or try—attempt to barricade it tight. The other one, and in our case here, we're trying to lead the traffic across the construction and we're just trying to indicate how they get across it, that's all."

geant Jack Merrit of the Missouri Highway Patrol investigated the accident. He said "new" highway 160 was under construction and was not open to the public between farm road 115 and the bridge because there were "markings and barricades" in place.[6] Richardson lived within viewing distance of the road construction. McTeer and Richardson knew that the construction had been going on for over a year before the accident. No evidence is found in the record of any "premature" use or travel on "new" highway 160 (other than that by McTeer on the night in question).

Section 304.010.1[7] requires drivers on the highways of Missouri to exercise "the highest degree of care." The history of this legislation is traced in *Burlingame v. Landis*, 362 Mo. 523, 242 S.W.2d 578 (1951). "The phrase 'highest degree of care', as used in the statute ... means 'that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstances.' " *Martin v. Turner*, 306 S.W.2d 473, 478 (Mo.1957); *Schneider v. Bi–State Development Agency*, 447 S.W.2d 788, 791 (Mo. App.1969). That definition of "highest degree of care" became so time honored, *Hodges v. American Bakeries Company*, 412 S.W.2d 157, 161 n. 1 (Mo. banc 1967), that it was the definition mandated by the Supreme Court when pattern instructions were first promulgated. MAI 11.03; MAI 11.08. Also, *see Robbins v. United States*, 593 F.Supp. 634, 639 (E.D.Mo.1984). The purpose of the law (requiring the exercise of the highest degree of care) is the protection of the life, limb, and property of all persons riding, driving, or otherwise upon the highways. *Teters v. Kansas City Public Service Company*, 300 S.W.2d 511, 516

(Mo.1957). The statute in question, having been considered by the Missouri appellate courts in a variety of cases, has been broadly construed. *Hewitt v. Masters*, 386 S.W.2d 9, 12 (Mo.1964).[8] "It is the duty of our courts to reasonably interpret Section 304.010 so that the legislature's purpose in enacting that law shall prevail and not so as to defeat the obvious intention of the lawmakers." *Hay v. Ham*, supra, at 122. In *Phillips v. Henson*, 326 Mo. 282, 30 S.W.2d 1065 (1930), a defendant urged error in giving an instruction exacting of him the highest degree of care because he argued there was no evidence that the street on which he was driving was a public highway. The court declined to give the statute such a "strained and narrow" construction and held:

> Keeping in mind the purpose of the statute, it is reasonable to conclude that the word "highways" was used in the statute in its popular rather than its technical sense, and was intended to include all highways traveled by the public, regardless of their legal status.

*Phillips v. Henson*, supra, 30 S.W.2d at 1068.

Cases evidencing a liberal interpretation of the term "highway" in § 304.010.1 include *City of Clayton v. Nemours*, 353 Mo. 61, 67, 182 S.W.2d 57, 60 (1944) ("The law of the road extends to all public highways, however created, and may also be applicable to roads not public highways, *if used for travel*." (Emphasis added.)); *Bush v. Kansas City Public Service Co.*, 350 Mo. 876, 884, 169 S.W.2d 331, 335 (1943) (bus driver had duty to exercise highest degree of care to discover traffic on a public street when operating a bus upon private road-

---

**6.** Sergeant Merrit's testimony was, in part: "It was very obvious that a bed was being prepared, it was incomplete, and also there was barricades to prevent entry or to discourage entry."

**7.** Section 304.010.1, RSMo 1979 Supp., read: "Every person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care."

**8.** In *Hay v. Ham*, 364 S.W.2d 118, 122 (Mo.App. 1962), it was noted that Missouri courts had given a broad interpretation to the term "operating" as found in § 304.010. Cases illustrating that statement were said to be *Teters v. Kansas City Public Service Company, supra; Phillips v. Stockman*, 351 S.W.2d 464 (Mo.App.1961); *Karnes v. Ace Cab Company*, 287 S.W.2d 378 (Mo.App.1956); *Daniel v. State Farm Mut. Ins. Co.*, 233 Mo.App. 1081, 130 S.W.2d 244 (1939); *Stewart v. Jeffries*, 224 Mo.App. 1050, 34 S.W.2d 560 (1931).

way with bus at street line and driver intending to drive it upon a public street); *Ely v. Parsons, supra,* at 617 (from moment grader left private driveway, he was "on the highway" and owed plaintiff the duty to operate the grader with the highest degree of care); *Eoff v. Senter,* 317 S.W.2d 666, 671 (Mo.App.1958) (motor vehicle on the shoulder of highway, 15 feet from traveled portion of road, and had not entered private parking lot gate, was "on highway" within meaning of statute).

In addition, appellant vigorously contends that *Trantham v. Gillioz,* 348 S.W.2d 737 (Mo.App.1961), requires reversal of the granting of the new trial to McTeer. The facts in *Trantham* and in this case are remarkably similar. Trantham sustained injuries when Trantham's car (being driven by another person with Trantham as a passenger) crashed into a dirt "pad" which extended across the pavement on "new" highway 66 which was then in the process of being constructed. *Trantham,* supra, at 738–39.[9] Barricades, barriers, and signs were in place in an effort to keep people off "new" highway 66. Jury trial resulted in a verdict for Trantham against a construction contractor. This court reversed the judgment, finding that Trantham was contributorily negligent as a matter of law:

> Ordinarily a traveler rightfully upon a public highway may, in the absence of any notice to the contrary, assume ... that the way ahead is clear and that it may be safely traveled at a reasonable speed. But this rule does not apply if the traveler knows, or should know, that the road is under construction, *especially if it is closed to public travel.* The rule then is the reverse. Under such conditions the traveler must use and exercise his faculties to see and discover and to so manage his automobile that he may, by the *exercise of care commensurate with the circumstances,* avoid any dangers

and difficulties which he might encounter in passing over ... such highway. He must proceed with caution. And the duty to use such care extends not only to the avoidance of particular dangers which are known or apparent but also to the anticipation and discovery of such obstructions as might be discovered by *the exercise of due care.*

*Trantham, supra,* at 741–42 (emphasis added). Careful reading of *Trantham* shows that the standard of care was not an issue in that case and was not decided. In fact, the language used in *Trantham* would indicate that this court was applying the standard that "an ordinarily careful and prudent person would use under the same or similar circumstances" rather than the standard of "a very careful and prudent person." Illustrative are the following comments in *Trantham,* at 743 (emphasis added):

> We think that any *reasonably prudent person* should and would have anticipated and allowed for the fact that there might be obstructions on the road.... A *reasonably prudent person* who drives an automobile over the highways ... should know that when a closed road is under construction as this one was, conditions do not remain static and obstructions are likely to occur at any time.

In *Penn v. Columbia Asphalt Company,* 513 S.W.2d 679 (Mo.App.1974), plaintiff truck driver collided with construction equipment parked on the shoulder of a highway which was undergoing extensive rebuilding. The jury returned a verdict for plaintiff but the trial court granted a new trial, in part, on the burden of proof instruction. Upon appeal, the appellate court reversed and reinstated plaintiff's verdicts. In doing so, the court held that *Trantham, supra,* was not an apt precedent to defeat

---

9. Some factual differences in the two cases should be noted. In *Trantham,* highway 66 was being made into a divided highway. Where the accident happened, a concrete pavement had been laid for some time and was intended to constitute the north (westbound) lane of "new" highway 66. Although the construction was not finished, the new pavement had (previously) been open so that the public could travel over it. *Id.* at 738. Indeed, local people had, from time to time, used portions of the new road although it was barricaded. Trantham and his driver had used the "new road" frequently.

recovery by plaintiff because "Penn was not injured by a hazard of construction but by a hazard of traffic...." [10] *Penn*, at 685

■ Some direction is also drawn from the "shopping center" cases where the statutory rules of the road do not apply because it is private property. *Doolin v. Swain*, 524 S.W.2d 877, 880 (Mo. banc 1975); *Kimmich v. Berry*, 319 S.W.2d 546 (Mo.1959); *Feldman v. Lewis*, 338 S.W.2d 364 (Mo.App.1960).

> While it is true that the shopping center ... is used by thousands of automobiles, it is not correct to say that it thereby becomes public property *or that operators of motor vehicles are as free to travel upon it as they are the public streets and highways which surround the parking center.*

*Doolin v. Swain, supra*, at 880 (emphasis added). Similarly, persons who operate motor vehicles upon highways which are being duly constructed and have never been opened to the public, are not free to travel upon such areas as if they are public streets. Motor vehicle operators on unopened areas where roads are being constructed are not subjected to hazards of traffic (unless there has been known "premature use" by the public). They are subjected to hazards of construction. *Penn v. Columbia Asphalt Company, supra.* Drivers who know the road is being newly constructed, and who use the same, cannot assume the way ahead is clear, *Trantham, supra*, but they are not subjected to the higher standard of care required of those operating motor vehicles on public highways if the motoring public has not been using the road.

Support for this view is found in other jurisdictions (even though not binding). In *Smith v. Goldman*, 9 A.D.2d 899, 194 N.Y. S.2d 1017 (Sup.Ct.1959), a highway by-pass had not been officially opened, although it had been used by appellant and others. The trial court applied statutory rules concerning right-of-way and dismissed both causes of action following trial by jury. The appellate court reversed for error in charging the jury that the by-pass was a public highway and subject to the statutory rules of the road. "The test of whether a highway is a public highway is whether the public has 'a general right of passage' (Citation omitted). Since the public did not have a 'general right of passage', the cited rule did not govern the intersection." *Smith v. Goldman, supra*, at 1020. In *Curtis v. Lawley*, 140 Colo. 476, 346 P.2d 579 (banc 1959), a trial court gave instructions involving intersecting public highways when, in fact, the highway upon which the deceased truck driver was operating was under construction. The appellate court reversed a verdict for plaintiff, saying:

> "Statutes and rules of the road are designed to govern traffic upon highways that are prepared for use as such, for public convenience and safety; and are applicable only to permanent lines of travel." They have no application "to parts of a road under construction, where changing conditions would not permit orderly travel under established rules." [11]

*Curtis v. Lawley, supra*, 346 P.2d at 581. Several other jurisdictions have found statutory standards of care for motor vehicle operators to be inapplicable to motorists on roadways under construction which have not been opened to the public.[12] There is

---

**10.** "As in *Trantham*, so in each of the other authorities respondent cites on this point, contributory negligence as a matter of law was found against a party injured by a hazard of construction—a road made unsafe by public work. Penn does not complain that his injury was caused by a condition of the road, however, but by road equipment carelessly parked at night without lights on a public highway in violation of the rules of the road." *Penn, supra*, at 685.

**11.** *Curtis v. Lawley* could be said to be distinguishable because Colorado statutes defined public and private roadways, with the private roadway definition being: " * * * every road or driveway not open to the use of the public for purposes of vehicular travel." C.R.S. '53, 13–1–1(21).

**12.** *See, e.g., Cash v. Roell*, 263 So.2d 563, 564 (Miss.1972); *Bennett v. Boney*, 168 Pa.Super. 385, 77 A.2d 694, 695 (1951) (where road closed for regrading and construction, it ceases to be highway, and is not subject to provisions of

authority to the contrary, holding that statutory rules of the road apply to roads under construction even if not officially open to public travel.[13]

 This court finds that the rules of the road should be applied, and the higher standard of care required by § 304.010.1 should be imposed where the area traveled is open for public travel *or* if not open for public use, is being used for public travel. It is the character of the use, i.e., use by the motoring public and exposure to possible injury by others operating motor vehicles in the public area, that mandates the application of the higher standard of care rather than the legal status of the area being traveled. Accordingly, this court finds that in the limited factual situation here presented in which (a) there is no evidence of premature use by the public of "new" highway 160 and (b) no evidence that McTeer had previously used the highway and (c) the highway was under construction, having never been opened, the § 304.010.1 standard of care was not applicable. The giving of Instruction No. 3 was erroneous.

 In a sub-part of Point I, appellant urges that McTeer was not prejudiced by Instruction No. 3 even if it erroneously stated the required standard of care. Before *Fowler v. Park Corp.*, 673 S.W.2d 749 (Mo. banc 1984), it was rather consistently held that imposing a higher duty of care by instruction than was required by law was prejudicial error.

Its submission [instruction submitting "highest degree of care"] here imposed an undue burden on Defendant and was prejudicially erroneous. A similar question was posed in *Van Brunt v. Meyer*, supra, [Mo.App.1967] 422 S.W.2d [364]

l.c. 369[3] where the standard of care required of the Plaintiff (concerning his contributory negligence) was one of "ordinary care." The standard imposed on him by the instruction offered was that of the "highest degree of care." This was held reversible error. In a reverse analogy an instruction which placed on Plaintiff the burden of proving Defendant's "ordinary care" rather than the "highest degree of care" was held prejudicial to the defendant in *Jungeblut v. Maris*, Mo.1943, 351 Mo. 301, 172 S.W.2d 861, 863[7]. Other cases have held instructions prejudicially erroneous because they imposed upon a party a higher duty than that required by law. *Schlegel v. Knoll*, Mo.1968, 427 S.W.2d 480, 485[10]; *Borgstede v. Waldbauer*, Mo., Banc, 1935, 337 Mo. 1205, 88 S.W.2d 373; *Oesterreicher v. Grubb*, Mo.1938, 119 S.W.2d 307. Also see *Conrad v. Hamra*, Mo.App.1923, 253 S.W. 808, 812. *Schneider v. Bi–State Development Agency, supra,* at 791. "An instruction imposing upon a defendant a standard of care greater than that required by law is prejudicially erroneous and if reviewed on appeal mandates reversal." *Lee v. Terminal Railroad Ass'n,* 669 S.W.2d 564, 566 (Mo. App.1984). The *Lee* case was a case in which the trial court ordered a new trial and that was affirmed on appeal. Then came *Fowler v. Park, supra,* at 755, where the Missouri Supreme Court determined that the erroneous use of an instruction to impose on the defendant a higher standard of care than the law required[14] was not so prejudicial as to require reversal. Given the decisions in *Fowler v. Park, supra,* and *Hudson v. Carr,* 668 S.W.2d 68 (Mo. banc 1984), neither of which refer to a presumption of prejudice nor give direction as to

statutory "vehicle code"); *Casey v. M.L. Pike & Son, Inc.,* 104 N.H. 521, 191 A.2d 533, 536 (1963); *Petersen v. Jansen,* 236 Wis. 292, 295 N.W. 30 (1940) (newly laid concrete highway was not "public highway"; hence statutory rules of road for public highways not applicable).

13. *Bresley v. O'Connor Incorporated,* 163 Neb. 565, 80 N.W.2d 711, 718 (1957); *Pestotnik v. Balliet,* 233 Iowa 1047, 10 N.W.2d 99, 103 (1943); *Austin Road Company v. Thompson,* 275 S.W.2d 521 (Tex.App.1955).

14. In *Fowler v. Park,* 673 S.W.2d at 754–55, at plaintiff's request, MAI 11.02 II was used instead of MAI 11.02 I in defining "negligent" and "negligence." The difference between the instructions was that the instruction used defined those words in terms of the care that *"a very careful* and prudent person" would use, whereas the definition should have been in terms of the care that *"an ordinarily careful* and prudent person" would use. (Emphasis in original.)

which party bears the burden on the issue of prejudice, questions have arisen as to the principles that are to be applied in appellate review in a case of instruction error resulting from a deviation from the MAI format. *Powers v. Ellfeldt*, 768 S.W.2d 142, 145–46 (Mo.App.1989). However, the law in Missouri continues to be that where, as here, the jury found in favor of appellant, at whose instance Instruction No. 3 was given, the error is presumptively prejudicial. *Steenrod v. Klipsch Hauling Co., Inc.*, 789 S.W.2d 158, 165 (Mo.App. 1990).

Appellant notes the similarity of the facts in this case and *Fowler v. Park* to urge that the error in Instruction No. 3 was not prejudicial. The similarities are striking. This court might well have sustained the trial court if the new trial had not been granted and McTeer had appealed from the denial of his motion for new trial. However, this court has frequently recognized that the prejudicial effect of an erroneous instruction is primarily a matter for the trial judge; and, on review, an appellate court is obliged to look with liberality upon the action of the trial court in granting a new trial. *Jenkins v. Keller*, 579 S.W.2d 166, 168 (Mo.App.1979).

We are indubitably tied to the aphoristic principle that an appellate court will be more liberal in upholding the action of a trial court in sustaining a motion for a new trial then [sic] in denying it. This is for the reason that a reversal of a court denying a new trial would necessitate reversal of a judgment, and also because the right of a trial court to grant a new trial involves judicial discretion, which many times is founded upon matters known to the court nisi but unknown to us.... This precept has been afforded complete accommodations in appeal cases involving jury instructions. (Citations omitted.)

*Brittain v. Clark*, 462 S.W.2d 153, 157 (Mo.App.1970).

Such principles have not been changed by *Fowler v. Park, Hudson v. Carr* and cases following them which look to counsel conduct, arguments, "sandbagging" issues, and other matters in determining if erroneous instructions are prejudicial. If anything, the appellate courts should be even more liberal in upholding the action of the trial court in sustaining motions for new trial for instruction error after *Fowler v. Park*. Possible prejudice after *Fowler v. Park* comes closer to being a factual issue than before. The prejudicial effect of Instruction No. 3 was primarily a matter for the trial court to judge. *Wilkerson v. State Farm Mutual Automobile Ins. Co.*, 510 S.W.2d 50, 55 (Mo. App.1974). Here, an experienced trial judge, upon reflection, determined that the wrong standard of care instruction had been given. While the trial court made no specific finding that it was prejudicial error, that is implicit in the order granting McTeer a new trial. Appellant has failed to make it perfectly clear that no prejudice resulted. In such circumstances, a reviewing court must look with liberality upon the action of the trial court in granting a new trial. *Wilkerson, supra*, at 56–57. Appellant urges that *Powers v. Ellfeldt* charges this court with determining whether an instructional error was prejudicial. This is true, but *Powers v. Ellfeldt* does not stand for the proposition that the initial decision of prejudice in an erroneous instruction cannot be made by a trial court. Here, the trial court made that "judicial determination" of prejudice in the giving of Instruction No. 3 and this court defers to that conclusion. *Jenkins v. Keller, supra*, at 168.

Finally, appellant contends that McTeer "is precluded from arguing instructional error by virtue of his own verdict-directing instruction." That argument is grounded on McTeer's verdict-directing instruction (Instruction No. 9) in which the term "public" appears.[15] However, use of

---

**15.** Instruction No. 9 read: "In your verdict you must assess a percentage of fault to defendant whether or not plaintiff James McTeer was partly at fault if you believe: First, defendant constructed the roadbed lower than the bridge floor and as a result, the road was not reasonably safe for the public, and Second, defendant failed to use ordinary care to warn of such unsafe

the word "public" in his verdict-director does not mean McTeer embraced the same standard of care theory presented by Instruction No. 3 as contended by appellant. This is best illustrated by the "shopping center" cases [16] where statutory rules of the road have been held inapplicable, but the public does travel. In such case, an instruction such as Instruction No. 9 would have appropriately included a clause that the "shopping center parking lot" was not reasonably safe for the *public*, but such instruction would not have operated to impose or require application of the statutory rules of the road on members of the public operating a motor vehicle on the parking lot of the shopping center. Appellant's reliance upon *Layton v. Palmer*, 309 S.W.2d 561 (Mo.1958); *Executive Jet Management, Etc. v. Scott*, 629 S.W.2d 598 (Mo. App.1981), and *McDonald v. Plas*, 401 S.W.2d 929 (Mo.App.1966), is misplaced.

McTeer's verdict-directing instruction referred only to the appellant's standard of care; i.e., "defendant failed to use ordinary care to warn of such unsafe condition." It was the appellant's converse instruction which directed that a percentage of fault was to be assessed to McTeer if he was driving while intoxicated and was thereby negligent. Appellant submitted Instruction No. 3 which defined the term negligent for the driver McTeer as being "the failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances." It was, therefore, the appellant who submitted the erroneous instructions and McTeer did not voluntarily submit the erroneous degree of care as his own standard of duty as was the case in *McDonald v. Plas, supra*, at 932.

The trial court's order granting McTeer a new trial is affirmed.

■ A new trial was ordered for passenger Richardson because "prejudicial evidence came before the jury ... which was immaterial ... resulting in an unfair trial as to ... Richardson's claim." Specifically, the trial court found that "suggestions in

questioning that ... Richardson ... had been 'bounced' from a bar were so prejudicial as to require a new trial." The trial court's granting Richardson a new trial must be viewed with a clear understanding of the background of the trial court's rulings with regard to drinking or possible intoxication of the passenger Richardson. Proposed introduction of evidence by appellant of Richardson's consumption of alcohol before the accident had been the subject of a motion in limine. In a pretrial conference, while discussing the motion in limine, the court cautioned:

If you mention the drinking you may create an impression that turns out to be false and in addition you may be dealing with emotional attitudes on drinking.... At the time most of those cases came in there was extreme intolerance to the use of intoxicants and if improperly mentioned before a jury then the Court *has to grant a new trial.*

*So it is extremely risky. In the present day community such as we have here in Greene County, and I think as we have on the jury, there may be intolerance to those people who are intolerant concerning the use of intoxicants. It may be a reverse prejudice.*

\* \* \* \* \* \*

[I]f I were to sustain this motion in limine there would be a certain amount of unfairness from the Court's ruling because the attorneys then would not have the opportunity to voir dire the jury on this issue....

So the motion is overruled. That doesn't mean that I expect the defendant to freely discuss the use of intoxicants during this ... case. *If it gets out of hand then it may require a new trial.* (Emphasis added.)

In voir dire, appellant's counsel said to the panel:

Now, in this case we expect the evidence will be that Mr. McTeer and Mr.

condition, and Third, as a direct result of such failure, plaintiff James McTeer was injured."

16. *See, e.g., Doolin v. Swain, supra; Kimmich v. Berry, supra; Feldman v. Lewis, supra.*

Richardson were intoxicated at the time of this accident.

The court overruled an objection by counsel for McTeer and Richardson. Appellant's counsel then renewed the comment and made substantial voir dire inquiry about the jury's experiences with alcohol and motor vehicle driving. During voir dire, juror Caughron commented:

I believe anyone that's drinking and they get behind the wheel has to take the responsibility for their actions....

Several other jurors indicated that "they were against drinking" and the trial judge dismissed several jurors "for cause" based upon statements indicating a possible inability to follow instructions of the court if drinking was involved by the parties.

McTeer testified that as he drove onto "new" highway 160, he "looked over at Danny [Richardson] and it looked like he was asleep and by the time I ... looked back up again there was the bridge." When Richardson testified, he said nothing whatsoever about the facts of the accident. He was asked if he was a passenger in the vehicle and if he was injured. He answered affirmatively. The rest of Richardson's direct examination was confined to his injuries and damages. Upon cross-examination, Richardson told of giving his brother-in-law a ride and running out of gas in front of the Country Corral about 7:30 p.m. on the evening before the accident. He was asked if it was a bar; he answered affirmatively. A belated objection to the question was overruled. Richardson went in the Country Corral to call McTeer. McTeer was not at home. Richardson waited at the Country Corral until 9:00 p.m. when McTeer arrived with Mike Richards. Appellant's counsel then asked:

Q. Had you been staying in the Country Corral drinking beer until they came to join you?

MR. MYERS: Your Honor, at this time we would renew our objection as being irrelevant to any issue in this case, this is the passenger.

THE COURT: The objection is sustained. The jury should disregard the answer.

Richardson, McTeer and their friend, Mike Richards, stayed at the Country Corral for a while and then went to Custer's Bar. Appellant's counsel then asked Richardson if the three of them had some drink's in Custer's Bar. Objection to the question was sustained, with the trial court saying:

THE COURT: ... You've gotten in where they went, so I didn't intend to restrict where they went ...—the way I see the opening statements, what Mr. McTeer had to drink of what this witness [Richardson] had to drink is an entirely separate thing.

MS. KOCH: May I ask him what Mr. McTeer had to drink?

THE COURT: Well, if you want to take the risk. It's a risk for the defendant, I'd say. I warned you in the beginning of the risk. This witness here did not say anything that you need to attack his credibility on, if you could, on the events of the accident.

\* \* \* \* \* \*

[I]t's my intention to make consistent rulings which will bar any testimony on drinking of this passenger. But drinking of the driver and the knowledge of the passenger about drinking of the driver.

Counsel for McTeer and Richardson then renewed their objection to testimony of drinking as outlined by the judge, renewed their motion in limine, and moved for a mistrial. Again, the trial court outlined its position:

THE COURT: Well, I have told defense counsel from the very beginning what risks they run, so I've said all I want to about it because the risk is either I grant a mistrial or I grant a new trial if counsel violate the rulings, so I'm not going to give any further instructions. Defense counsel know what the law is and what I—and now I need to protect a fair trial.

The trial court went further and pointed out to appellant's counsel that Richardson, in his direct examination, did not get into the facts of the accident and so appellant had no legal reason to attack Richardson's credibility, memory, or the extent of his intoxication. Appellant's counsel then

asked Richardson if McTeer had anything to drink at Custer's bar. After objection to the question was overruled, Richardson answered, "yes." With that background, appellant's counsel then asked Richardson:

Q. [By Ms. Koch]: Do you recall being bounced out of Custer's?

Objection to the question was sustained. The jury was instructed to disregard the question. Counsel for Richardson moved for a mistrial. That motion was initially denied, but this was the basis for the new trial later given when new trial motions were filed. Following the "bounced out of Custer's" question, appellant's counsel asked Richardson a series of questions which revealed that after McTeer and Richardson left Custer's, they stopped at a liquor store. They then went to Wild Bill's (a bar). After leaving Wild Bill's they went to McTeer's house where they talked for a while. They then left McTeer's house and went to Richardson's house to get a gas can so they could put gas in Richardson's car. While at Richardson's house, he and his wife got into an argument. Richardson and McTeer then left, got the gas, put the gas in Richardson's truck, and went back to McTeer's house. Once again, McTeer and Richardson "talked" and, finally, shortly before 3:00 a.m. left McTeer's home on the trip that ultimately terminated upon impact with the bridge.

Appellant contends that the unanswered "bounced out of Custer's" question was intended to demonstrate that Richardson's forced departure from Custer's resulted in a lost opportunity for him to monitor McTeer's alcohol consumption. Appellant says the question was relevant evidence for the jury to consider in determining if Richardson failed to exercise ordinary care as McTeer's passenger. Such intended purpose for the question does not seem entirely plausible for two reasons. First, it would have been to appellant's best interest to show Richardson with McTeer as much as possible throughout the evening so as to demonstrate to the jury that Richardson had every opportunity to know and observe the nature and extent of McTeer's alcohol related impairment; hence, Richardson's failure to exercise ordinary care in

riding with McTeer. Eliciting testimony that Richardson was "bounced out of Custer's" (and presumably thereby separated from McTeer for some period) would not support appellant's affirmative defense that Richardson failed to exercise ordinary care in riding with an intoxicated person. Secondly, the timing of the question belies appellant's contention as to the purpose for the question. The "bounced out of Custer's" question was asked soon after appellant's counsel had asked Richardson, "Did the three of you have some drinks at Custer's Bar?" In the intervening period, the trial court explained the reasons for its ruling.

■ This court cannot fully know, from the record, the prejudicial effect of the events. For that reason this court must abide by the rule that appellate courts should be more liberal in upholding a grant of a new trial than in awarding a new trial when the trial court denies the motion. *Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721, 723 (Mo. banc 1987). "Not everything that occurs during the trial with its full influence as discerned by the trial judge can be shown in the record that is sent to the appellate court." *Id.* at 723. In this case, the record is replete with the trial court's concern about the prejudicial effect of introduction of evidence of Richardson's consumption of alcohol. The ebb and flow of a trial; juror's expressions and reactions to improper questions; and the discernable, but unrecordable, impact of some events in a courtroom can never be fully conveyed to an appellate court through the record it receives. Recognition of that fact has given rise to the principle that appellate courts usually defer to the trial court's decision when the trial court grants a new trial on discretionary grounds. "The trial judge who directs the course of the trial and personally observes the basis of the ruling is in the best position to know the effect of the error." *Yoon, supra,* at 723; *Higgins v. Gosney,* 435 S.W.2d 653 (Mo.1968). This court, on the "cold record" as a trial court, might have ruled otherwise and not have granted Richardson a new trial. *Farley v.*

*Johnny Londoff Chevrolet, Inc.,* 673 S.W.2d 800, 803 (Mo.App.1984). The question on appeal, however, is whether the trial court abused its discretion in granting the new trial on discretionary grounds. *Yoon, supra,* at 723; *Penn v. Hartman,* 525 S.W.2d 773, 775 (Mo.App.1975). Bearing in mind the concern of the trial court about a fair trial voiced in pre-trial conference and throughout the trial; considering the trial court's warnings to appellant's counsel about objectionable questions designed to show Richardson's alcohol consumption; noting the timing of the "bounced out of Custer's" question (asked immediately after the questions concerning Richardson's drinking); and indulging every reasonable inference favorable to the trial court's ruling, *Farley v. Johnny Londoff Chevrolet Inc., supra,* at 803, this court does not find an abuse of discretion by the trial court in ordering a new trial for Richardson. A single ground of error, if prejudicial, will warrant the grant of a new trial. *Yoon, supra,* at 723. The trial court's granting of a new trial to Richardson is affirmed.

The judgment is affirmed as to McTeer and Richardson, and the case is remanded for a new trial.

PARRISH, P.J., and HOGAN, J, concur.